UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**FILED**

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| vs. | ) No. 02 CR 312 |
| | ) Judge Ruben Castillo |
| LABS OF VIRGINIA, INC. | ) |

AUG 1 8 2004

MICHAEL W. DOBBINS
CLERK, U.S. DIST

DOCKETED
AUG 1 9 2004

## PLEA AGREEMENT

This Plea Agreement between the United States Attorney for the Northern District of Illinois, PATRICK J. FITZGERALD, and the defendant, LABS OF VIRGINIA, INC. ("LABS"), by its authorized representative for the limited purpose of accepting the terms of this Plea Agreement and entering the plea of guilty or authorizing counsel to enter the plea of guilty, CHARLES J. STERN, and its attorneys, MICHAEL L. FAYAD and JAMES G. RICHMOND, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure and is governed in part by Rule 11(c)(1)(C), as more fully set forth in paragraph 17 below.

Charles J. Stern was Chairman of the Board of Directors of LABS at the time of the issuance of the indictment in this case. Stern, along with William Curtis Henley and David M. Taub, were also named as defendants in the indictment. Defendant LABS was sold after the issuance of the indictment and is now owned by individuals other than Stern, Henley or Taub. As part of the sale agreement, Stern, on behalf of the now former owners of LABS, retained responsibility to direct the defense and any resolution of the charges in the indictment and the civil forfeiture action, and for any liability to LABS arising from both matters. The new owners of LABS were not involved in the conduct giving rise to the charges in the indictment and the new owners did not assume any personal responsibility for this conduct through their post-indictment acquisition of LABS.

Charles J. Stern has been authorized by the terms of the stock sales agreement, and by the Notarized Letter of Authorization attached hereto as Exhibit 1, dated August 16, 2004, and by the current ownership of LABS to enter into this Plea Agreement, and to enter the plea of guilty on behalf of defendant LABS. A copy of the Letter of Authorization shall be made part of the record of this case at the time of the entry of the plea of guilty. The Letter of Authorization also authorizes Mr. Fayad and Mr. Richmond, the attorneys for defendant LABS, to appear before this Court pursuant to Federal Rule of Criminal Procedure 43(b)(1) and to enter the plea on behalf of defendant LABS.

This Plea Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant LABS regarding defendant's criminal liability in Case No. 02 CR 312, any liability which LABS may have had as a result of the Complaint for Forfeiture referred to in paragraph 18 of this Plea Agreement, and any civil, judicial claim, demand, or cause of action whatsoever of the United States or its agencies relating to the facts and allegations set out in the indictment in this case.

This Plea Agreement concerns only criminal liability and any forfeiture liability under the Complaint for Forfeiture. Moreover, this Agreement is limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other federal, state or local prosecuting, administrative or regulatory authorities except as expressly set forth in this Agreement.

By this Plea Agreement, PATRICK J. FITZGERALD, United States Attorney for the Northern District of Illinois, and the defendant, LABS, by CHARLES J. STERN, its authorized representative, and its attorneys, MICHAEL L. FAYAD and JAMES G. RICHMOND, have agreed upon the following:

1.      Defendant LABS acknowledges that it has been charged in the indictment in this case with: (a) submitting false records in connection with four shipments of primates from Indonesia to the United States in violation of Title 16, United States Code, Sections 3372(d) and 3373(d)(3)(A)(i) (Counts One through Four); (b) importation of wildlife in violation of foreign law, in violation of Title 16, United States Code, Sections 3372(a)(2)(A) and 3373(d)(2)(Count Five); (c) importation of primates into the United States contrary to law, in violation of Title 18, United States Code, Section 545 (Counts Six through Nine); and (d) importation of nursing female primates and their unweaned young, in violation of Title 16, United States Code, Sections 3372(a)(1) and 3373(d)(2) (Counts Ten through Twelve).

2.      Defendant LABS's authorized representative has read the charges against defendant contained in the indictment, and those charges have been fully explained to defendant's authorized representative by defendant's attorneys.

3.      Defendant LABS's authorized representative fully understands the nature and elements of the crimes with which defendant has been charged.

4.      Defendant LABS will enter a voluntary plea of guilty to Count One of the indictment in this case.

5.      Defendant LABS will plead guilty because it is in fact guilty of the charge contained in Count One of the indictment. In pleading guilty, defendant admits the following facts and that those facts establish its guilt and relevant sentencing facts beyond a reasonable doubt:

(a) During the period from at least 1996 through 1998, defendant LABS, a Virginia corporation, was engaged in the business of, among other things, breeding, selling, and maintaining non-human primates for use in medical research. LABS imported non-human primates for these

3

purposes. One type of non-human primate which defendant LABS imported for these purposes was known by the scientific name "Cynomolgolus macaques" (*Macaca fascicularis*), and by the common name "crab-eating macaques" ("macaques"). Defendant LABS had a non-human primate facility located in Yemassee, South Carolina.

(b) Co-defendant Charles J. Stern was defendant LABS's Chairman of the Board. Co-defendant William Curtis Henley III was on defendant LAB's Board of Directors. Co-defendant David M. Taub was the President and Chief Operating Officer of defendant LABS and was on LABS's Board of Directors.

(c) Indonesian Aquatics Export CV ("Inquatex") was a company located in Indonesia that was owned by Person A and which was engaged in the business of breeding, raising and exporting non-human primates, including macaques.

(d) The United States and Indonesia, among many other countries, are parties or signatories to an international treaty known as the Convention on International Trade in Endangered Species of Wild Fauna and Flora ("CITES"). CITES was enacted in order to protect, among other things, certain species of wildlife against over-exploitation. Species are designated under CITES according to a classification system known as "Appendices." Appendix II to CITES includes wildlife species which, although not necessarily threatened at the present time, might become threatened if trade in those species is not strictly limited. Thus, in an effort to monitor and to control the trade of Appendix II species, CITES requires that a party to the treaty such as the United States only import species included in Appendix II that are accompanied by a valid foreign export permit (a "CITES" permit) from the species' country of origin or from the country from which the species were exported.

4

(e) Macaques have been designated as an Appendix II species under CITES since 1977.

(f) The United States Fish and Wildlife Service ("USFWS") is designated by Congress as the authority within the United States which enforces CITES. The USFWS issues regulations to enforce the various wildlife protection provisions of CITES and to provide safeguards for the importation of wildlife into the United States. All persons, including corporations, involved in importing wildlife into the United States are required to adhere to these regulations.

(g) All wildlife imported into the United States, including species in Appendix II to CITES, have to first be presented to the USFWS and the agency which, at the time period relevant to this case, was known as the United States Customs Service ("Customs") for inspection. Certain documents also have to accompany and be presented with each shipment. These documents include all permits and licenses required by the laws and regulations of the United States and all export-related permits required by the laws and regulations of the country of export.

(h) Shipments containing species included in Appendix II to CITES have to be accompanied by a valid CITES permit. A CITES permit is valid only for the animals described in the permit.

(i) One of the columns on a CITES permit is labeled "Appendices (source)." A CITES permit which contains the designation "II" in this column reflects a reference to CITES Appendix II. A CITES permit which contains the designation "II(C)" in this column means that the animals to which the CITES permit applied were bred in captivity.

(j) On or about January 31, 1997, defendant LABS entered into a formal agreement with Inquatex for the purchase of the Inquatex colony of approximately 1,312 macaques. The

5

Inquatex colony contained both male and female non-human primates. The colony consisted of macaques caught in the wild at the time the colony was started, bred in the wild and born in captivity at Inquatex, and bred and born in captivity at Inquatex.

(k) The Inquatex colony was transported from Indonesia to defendant LABS in the United States in seven separate shipments between on or about February 20, 1997 and on or about October 13, 1998. The first four shipments entered the United States through O'Hare International Airport ("O'Hare") in Chicago, Illinois. These four shipments arrived at O'Hare on or about the following dates: (1) February 20, 1997; (2) April 10, 1997; (3) May 1, 1997; and (4) May 30, 1997.

(l) The four O'Hare shipments contained a mix of wild-caught and captive-bred macaques. The CITES permits for each shipment, however, through the use of the "II(C)" designation, falsely represented that the shipments contained only captive-bred macaques.

(m) On or about February 7, 1997, Person A sent defendant, through Taub, four CITES permits dated February 5, 1997, for the 220 macaques in the first shipment. Each of the CITES permits authorized the export of 55 "crab-eating monkeys."

(n) On or about February 20, 1997, defendant did knowingly submit to the USFWS and/or Customs a false record, account, label for, and a false identification of wildlife, namely, CITES permits for the shipment of approximately 220 *Macaca fascicularis* which, through the "II(C)" notation, falsely represented that the shipments contained only captive-bred *Macaca fascicularis*, when, in fact, the shipment contained approximately 80 wild-caught *Macaca fascicularis*, which wildlife had been imported from a foreign country, namely, Indonesia, and transported in foreign commerce.

6

6.     Defendant LABS, by its authorized representative, also acknowledges that pursuant to 18 U.S.C. §§ 3553 and 3572, the court may consider the following conduct for purposes of computing its sentence:

(a) On or about April 10, 1997, defendant did knowingly submit to the USFWS and/or Customs a false record, account, label for, and a false identification of wildlife, namely, CITES permits for a shipment consisting of approximately 253 *Macaca fascicularis* which, through the "II(C)" notation, falsely represented that the shipments contained only captive-bred *Macaca fascicularis*, when, in fact, the shipment contained approximately 98 wild-caught *Macaca fascicularis*, which wildlife had been imported from a foreign country, namely, Indonesia, and transported in foreign commerce.

(b) On or about May 1, 1997, defendant did knowingly submit to the USFWS and/or Customs a false record, account, label for, and a false identification of wildlife, namely, CITES permits for a shipment consisting of approximately 120 *Macaca fascicularis* which, through the "II(C)" notation, falsely represented that the shipments contained only captive-bred *Macaca fascicularis*, when, in fact, the shipment contained approximately 50 wild-caught *Macaca fascicularis*, which wildlife had been imported from a foreign country, namely, Indonesia, and transported in foreign commerce.

(c) On or about May 30, 1997, defendant did knowingly submit to the USFWS and/or Customs a false record, account, label for, and a false identification of wildlife, namely, CITES permits for a shipment consisting of approximately 253 *Macaca fascicularis* which, through the "II(C)" notation, falsely represented that the shipments contained only captive-bred *Macaca fascicularis*, when, in fact, the shipment contained approximately 99 wild-caught *Macaca*

7

*fascicularis,* which wildlife had been imported from a foreign country, namely, Indonesia, and transported in foreign commerce.

7.      For purposes of applying the guidelines promulgated by the United States Sentencing Commission pursuant to Title 28, United States Code, Section 994, the parties agree on the following points:

(a) The Sentencing Guidelines in effect on November 1, 2003 are applicable to defendant's offense.

(b) Restitution is not an issue in this case and therefore restitution pursuant to Guideline § 8B1.1 is not appropriate.

(c) A remedial order pursuant to Guideline § 8B1.2(a) is not appropriate.

(d) Community service pursuant to Guideline § 8B1.3 is not appropriate.

(e) An order of notice to victims, pursuant to Guideline § 8B1.4 is not appropriate.

(f) The provisions of Guideline §§ 8C2.2 through 8C2.9 do not apply because defendant's offense of conviction is an offense against the environment.

(g) Defendant has the ability to pay a fine and, thus, pursuant to Guideline § 8C2.10. a fine is appropriate and should be determined by applying the provisions of 18 U.S.C. §§ 3553 and 3572.

(h) A term of probation is necessary to reduce the likelihood of future criminal conduct, pursuant to Guideline § 8D1.1(a)(6). The term of probation shall be at least one year but not more than five years, pursuant to Guideline § 8D1.2(a)(1) because the offense of conviction is a felony; and

8

(i) The defendant and its attorneys and the government acknowledge that the above calculations are preliminary in nature and based on facts known to the government as of the time of this Agreement. The defendant's authorized representative understands that the Probation Department will conduct its own investigation and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final Sentencing Guidelines calculation. Accordingly, the validity of this Agreement is not contingent upon the probation officer's or the Court's concurrence with the above calculations.

8.  Errors in calculations or interpretation of any of the guidelines may be corrected by either party prior to sentencing. The parties may correct these errors or misinterpretations either by stipulation or by a statement to the probation office and/or court setting forth the disagreement as to the correct guidelines and their application. The validity of this Agreement will not be affected by such corrections, and the defendant shall not have a right to withdraw its plea on the basis of such corrections.

9.  Defendant, by its authorized representative, understands the count to which defendant will plead guilty carries the following penalties: (a) a term of probation for defendant of between one to five years pursuant to 16 U.S.C. § 3373(d)(3)(A) and 18 U.S.C. § 3561; (b) a maximum fine of $500,000, or a fine of twice the pecuniary gain to the defendant or twice the pecuniary loss to the victims, whichever is greater; and (c) any restitution ordered by the Court. The parties agree that, pursuant to 18 U.S.C. § 3571(d), the pecuniary gain or pecuniary loss would be difficult to ascertain or estimate due to the nature and circumstances of defendant's offense and any attempt at such calculation would unduly complicate and prolong the sentencing process.

10.     The defendant's authorized representative understands that in accord with federal law, Title 18, United States Code, Section 3013, upon entry of judgment of conviction, the defendant will be assessed $400 on each count to which it has pled guilty, in addition to any other penalty imposed. The defendant agrees to pay the special assessment of $400 at the time of sentencing with a check or money order made payable to the Clerk of the U. S. District Court.

11.     Defendant's authorized representative understands that by pleading guilty the defendant surrenders certain rights, including the following:

(a) If defendant persisted in a plea of not guilty to the charges against it, it would have the right to a public and speedy trial. The trial could be either a jury trial or a trial by the judge sitting without a jury. The defendant has a right to a jury trial. However, in order that the trial be conducted by the judge sitting without a jury, the defendant, by its authorized representative, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

(b) If the trial is a jury trial, the jury would be composed of twelve laypersons selected at random. Defendant and its attorneys would have a say in who the jurors would be by removing prospective jurors for cause where actual bias or other disqualification is shown, or without cause by exercising so-called peremptory challenges. The jury would have to agree unanimously before it could return a verdict of either guilty or not guilty. The jury would be instructed that defendant is presumed innocent, and that it could not convict it unless, after hearing all the evidence, it was persuaded of defendant's guilt beyond a reasonable doubt and that it was to consider each count of the indictment separately.

(c) If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, and considering each count separately, whether or not the judge was persuaded of defendant's guilt beyond a reasonable doubt.

(d) At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and its attorneys would be able to cross-examine them. In turn, defendant could present witnesses and other evidence in its own behalf. If the witnesses for defendant would not appear voluntarily, it could require their attendance through the subpoena power of the court.

(e) At a trial, if defendant desired to do so, defendant could, through its agents, testify in its own behalf.

12. The defendant understands that it may be entitled to have any disputed sentencing fact which could increase its sentence determined at a jury trial under a proof beyond a reasonable doubt standard. The defendant further understands that by pleading guilty, it agrees:

(a) To have its sentence determined under the Sentencing Guidelines; and

(b) To waive having sentencing facts alleged in the indictment and found by the jury beyond a reasonable doubt; and

(c) To have the court determine its sentencing facts by a preponderance of the evidence; and

(d) To allow the court to consider any reliable evidence, including hearsay, in determining its sentence.

11

13. Defendant, by its authorized representative, understands that by pleading guilty the defendant is waiving all the rights set forth in paragraphs 11 and 12. Defendant's attorney has explained those rights to defendant's authorized representative, and the consequences of its waiver of those rights. Defendant, by its authorized representative, further understands defendant is waiving all appellate issues that might have been available if defendant had exercised its right to trial.

14. The defendant is also aware that Title 18, United States Code, Section 3742 affords a defendant the right to appeal the sentence imposed. Acknowledging this, the defendant, by its authorized representative, knowingly waives the right to appeal any sentence within the maximum provided in the statute of conviction (or the manner in which that sentence was determined), on the grounds set forth in Title 18, United States Code, Section 3742 or on any ground whatsoever, in exchange for the concessions made by the United States in this Plea Agreement. The defendant also waives its right to challenge its sentence or the manner in which it was determined in any collateral attack. The waiver in this paragraph does not apply to a claim of involuntariness, or ineffective assistance of counsel, which relates directly to this waiver or to its negotiation.

15. Defendant understands that the indictment and this Plea Agreement are matters of public record and may be disclosed to any party.

16. Defendant understands that the United States Attorney's Office will fully apprise the District Court and the United States Probation Office of the nature, scope and extent of defendant's conduct regarding the charges against it, and related matters, including all matters in aggravation and mitigation relevant to the issue of sentencing.

17. This Plea Agreement is governed, in part, by Federal Rule of Criminal Procedure 11(c)(1)(C). That is, the parties have agreed that:

12

(a) The sentence imposed by the Court shall include a term of probation of two years which shall be served by defendant LABS through its current ownership.

(b) As a part of the sentence, the parties agree that the court shall order defendant to pay a fine in the amount of $500,000. The parties agree that this fine reasonably reflects the seriousness of defendant's offense and the need to provide just punishment and adequate deterrence and that this fine is consistent with the factors enumerated in 18 U.S.C. §§ 3553 and 3572 as relevant to the imposition of a fine. The parties agree that the fine shall be designated for deposit into the "Lacey Act Reward Account" if authorized by law.

(c) The defendant shall pay the fine ordered by the Court on the day of sentencing with a certified or cashier's check or, in the event the sentencing hearing does not conclude by 4:00 p.m. on the day on which it is scheduled, then defendant shall submit the certified or cashier's check in the full amount of the fine by the close of business on the day following the sentencing hearing.

(d) Other than the agreed terms set forth in paragraphs 17(a) through 17(c) above, the parties have agreed that the Court remains free to impose the sentence it deems appropriate. If the Court accepts and imposes the parties' agreed terms, the defendant may not withdraw this plea as a matter of right under Federal Rules of Criminal Procedure 11(c) and (d). If, however, the Court refuses to impose the agreed terms, thereby rejecting the Plea Agreement, or otherwise refuses to accept the defendant's plea of guilty, this Agreement shall become null and void and neither party will be bound thereto.

18. The United States previously instituted a civil forfeiture proceeding captioned *United States v. Monkey Money: The Value of Monkeys Illegally Imported by Labs of Virginia, Inc., and Its Officers as Alleged in United States v. Labs of Virginia, Inc., et al., No. 02 CR 312 (N.D. Ill)*, No.

13

02 C 3833. This forfeiture proceeding sought to forfeit the proceeds from the importation of the primates pursuant to 18 U.S.C. § 545. Defendant LABS, by its authorized representative, agrees to pay the United States of America the sum of $64,675.00 in full satisfaction of the allegations in the Complaint in Case No. 02 C 3833. This sum is in addition to the criminal fine described above in paragraph 17.[1] Defendant LABS agrees to pay the $64,675.00 on the day of sentencing in the criminal proceeding with a certified or cashier's check or, in the event the sentencing hearing does not conclude by 4:00 p.m. on the day on which it is scheduled, then defendant shall submit the certified or cashier's check in the full amount by the close of business on the day following the sentencing hearing.

19. Defendant LABS, by its authorized representative and on behalf of the members of the Board of Directors at the time of the allegations in the indictment, including Stern, Henley and Taub, agrees that during the period of probation imposed in this case Stern, Henley and Taub will have no personal involvement in any application for a license from the United States Fish and Wildlife Service to import wildlife or any importation of wildlife after any such license application is granted. Stern, Henley, and Taub each understand that in the event of a violation of this paragraph, the government, at its option, may move to vacate the Plea Agreement as to the particular individual defendant or defendants who violated this paragraph, rendering the Plea Agreement null and void as to that particular defendant or defendants, and thereafter prosecute that particular defendant or

---

[1] Defendant LABS, by its authorized representative and its attorneys, prior to any substantive discussions about the civil forfeiture proceeding with the representatives of the government assigned to this criminal proceeding, informed the representatives of the government assigned to this criminal proceeding that it wished to resolve the civil forfeiture proceeding at the same time as and as a part of the criminal proceeding and that it had no objection to the joint resolution of the two proceedings.

14

defendants not subject to any of the limits set forth in this Agreement. Stern, Henley and Taub each

understand and agree that in the event that any of them individually breach this paragraph of the Plea

Agreement, and the Government elects to void the Plea Agreement and prosecute the particular

defendant or defendants who violated this paragraph, any prosecutions that are not time-barred by

the applicable statute of limitations on the date of the signing of this Agreement may be commenced

against that particular defendant or defendants in accordance with this paragraph, notwithstanding

the expiration of the statute of limitations between the signing of this Agreement and the

commencement of such prosecutions. Stern (in his individual capacity), Henley and Taub are not

signatories to this Plea Agreement but defendant LABS, by its authorized representative,

acknowledges that it has received the specific approval of these individuals to abide by the

representations in this paragraph.

20. After sentence has been imposed on the count to which defendant LABS pleads guilty

as agreed herein, the government will move to dismiss the remaining counts as to defendant LABS

and all counts as to defendants Stern, Henley and Taub.

21. The United States Attorney's Office for the Northern District of Illinois agrees not to

refer this matter to the Department of Justice or any of its agencies for civil or administrative

proceedings based on the facts and allegations set out in the indictment in this case. The Department

of Justice's Environment and Natural Resources Division has advised the United States Attorney's

Office for the Northern District of Illinois that it will not institute any separate criminal proceedings

based on the facts and allegations set out in the indictment in this case.

22. Defendant LABS, by its authorized representative, understands that its compliance with

each part of this Plea Agreement extends throughout the period of its sentence, and failure to abide

15

by any term of the Plea Agreement is a violation of the Agreement. Defendant further understands that in the event it violates this Agreement, the government, at its option, may move to vacate the Plea Agreement, rendering it null and void, and thereafter prosecute defendant LABS not subject to any of the limits set forth in this Agreement, or to resentence defendant LABS. Defendant LABS understands and agrees that in the event that this Plea Agreement is breached by defendant LABS, and the Government elects to void the Plea Agreement and prosecute defendants LABS, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against this defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

23. Defendant LABS, by its authorized representative and its attorneys acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Agreement, to cause defendant to plead guilty.

24. Defendant agrees this Plea Agreement shall be filed and become a part of the record in this case.

25. Defendant, by its authorized representative, acknowledges that it has read this Agreement and carefully reviewed each provision with its attorneys. Defendant further acknowledges that it

understands and voluntarily accepts each and every term and condition of this Agreement.

AGREED THIS DATE: _August 18, 2004_

PATRICK J. FITZGERALD
United States Attorney

LABS OF VIRGINIA, INC.
Defendant

CHARLES J. STERN,
Defendant's Authorized Representative

MICHAEL L. FAYAD
Attorney for Defendant

DIANE MacARTHUR
Assistant United States Attorney

JAMES G. RICHMOND
Attorney for Defendant